Judge CALABRESI dissents in a separate opinion.
JOSÉ A. CABRANES,
Circuit Judge:
This appeal requires us to interpret the automatic stay provision of the Bankruptcy Code, an exception to that provision, and an exception to that exception. Specifically, the question presented, as a matter of first impression, is whether an order obtained by the Securities and Exchange Commission (the “SEC”) from the United States District Court for the Southern District of New York (Richard Owen, Judge), requiring defendant Robert E. Brennan, a debtor in bankruptcy, to repatriate the assets of an offshore asset protection trust violates the automatic stay provision. The SEC argues that the order fits within an exception to the automatic stay provision for any “action or proceeding by a governmental unit ... to enforce such governmental unit’s ... police and regulatory power.” 11 U.S.C. § 362(b)(4). Brennan contends that the order violates the automatic stay provision because it fits within an exception to this “governmental unit” exception for any effort to enforce a money judgment. For the reasons stated below, we conclude that the order of-the District Court must be vacated.
I.
In 1985, the SEC began an action in the District Court against Brennan and First Jersey Securities, Inc. (“First Jersey”), a discount broker-dealer run by Brennan specializing in the underwriting, trading, and distribution of low-priced securities. The SEC alleged that First Jersey, at *68 Brennan’s direction, had defrauded its customers by inducing them to buy certain securities at excessive prices unrelated to prevailing market prices, with the result that First Jersey and Brennan gained more than $27 million in illegal profits. In July 1995, following a 41-day bench trial held the previous year, Judge Owen entered judgment in the SEC’s favor (the “July 1995 Judgment”), finding that Brennan and First Jersey had perpetrated a “massive and continuing fraud” on their customers in violation of the federal securities law and ordering them, inter alia, jointly and severally to disgorge approximately $75 million in ill-gotten gains and prejudgment interest. SEC v. First Jersey Sec., Inc., 890 F.Supp. 1185, 1195, 1213 (S.D.N.Y.1995), aff'd in part rev’d in part, 101 F.3d 1450 (2d Cir.1996), cert. denied, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997). On August 7, 1995, Brennan filed a petition for Chapter 11 bankruptcy protection.
Some time during the 1994 trial, before the July 1995 Judgment was entered against Brennan and before he filed for bankruptcy protection, Brennan established an offshore asset protection trust in Gibraltar, called the Cardinal Trust, and funded the trust with $5 million in municipal securities.[1] Brennan’s three adult sons and the “Robert E. Brennan Foundation, Inc.” are the beneficiaries of the Cardinal Trust. Nevertheless, the trust terms provide that the trustee has no obligation to make payments to these beneficiaries during the life of the trust. Moreover, under the terms of the trust, the principal and accumulated interest revert to Brennan after ten years (or at some point thereafter as established by the trustee). Notwithstanding this reversionary interest, Brennan did not list the Cardinal Trust as property of his estate in his original bankruptcy petition. After law enforcement authorities discovered the existence of the trust, Brennan amended his petition to include the trust, but he valued his interest at $0.
The SEC alleges that, notwithstanding Brennan’s bankruptcy and the appointment of a bankruptcy trustee in June 1997, Brennan has exercised, and continues to exercise, control over the Cardinal Trust. Specifically, it contends that Brennan has used the trust to support “a lavish, globetrotting lifestyle” and that he has directed efforts to keep the trust out of his creditors’ reach. The SEC notes, in particular, that since entry of the July 1995 Judgment and Brennan’s filing for bankruptcy, the Cardinal Trust has been relocated twice, first from Gibraltar to Mauritius and then from Mauritius to Nevis. According to the SEC, these moves were prompted by a provision in the trust indenture called a “flight clause,” which requires the trustee to relocate the trust upon occurrence of an “event of duress,” including government *69 action in any part of the world that attempts to take control of the trust assets or “any order, decree or judgment of any court ... which will or may ... in any way control, restrict or prevent the free disposal” of trust property.
Since 1998, several efforts have been made to require Brennan to repatriate the assets of the Cardinal Trust. First, in May 1998, with the support of the SEC, the bankruptcy trustee moved in the United States Bankruptcy Court for the District of New Jersey (Kathryn C. Ferguson, Bankruptcy Judge) for an order requiring repatriation. On June 5, 1998, the Bankruptcy Court denied the application, but entered an order — on Brennan’s consent— enjoining Brennan from any action that might cause the transfer of assets of the Cardinal Trust. Second, the bankruptcy trustee commenced an action in the High Court of St. Kitts and Nevis, then (and apparently now) the situs of the Cardinal Trust, seeking to recover the trust assets. On July 28, 1999, the High Court dismissed the action for failure to state a claim under Nevis law. Finally, in April 2000, following a deposition of Brennan taken in this action pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, in which Brennan repeatedly invoked the Fifth Amendment to avoid answering questions about his relationship to the trust, the SEC moved before the District Court for an ex parte order to show cause why Brennan should not be held “in civil contempt of the [July 1995] disgorgement judgment” and for certain “ancillary relief,” including repatriation of the Cardinal Trust.
In its motion papers, the SEC argued that relief was warranted for the following reasons:
Although the United States Bankruptcy Court ... has held that the [July 1995] judgment rendered by this Court may not be discharged in Brennan’s bankruptcy, Brennan has not complied with the judgment, and has asserted the Fifth Amendment in response to all questions about his intent and ability to pay any part of it. Both in anticipation of the judgment, and after its entry, he has transferred funds offshore and dissipated assets, and is now living a lavish lifestyle while refusing to disclose how he is financing it.
At the same time, the SEC asserted that it “is not seeking to collect the judgment now. Rather, it is seeking information and the return of assets transferred by Brennan so as to preserve them for the benefit of all potential claimants.” During an ex parte hearing held on the record before the District Court, counsel for the SEC reiterated this assertion, stating that the SEC was seeking “to have all of the assets preserved to the extent possible so they don’t go moving around the world again. We are not interested in collecting ourselves. Your Honor, ... we may only be entitled to a pro rata share of this.”
After hearing the SEC’s application, the District Court entered an order on April 7, 2000 (the “April 7, 2000 Order”) requiring Brennan to appear on April 20, 2000 to show cause why he should not be held in contempt of the July 1995 Judgment (the “Contempt Order”) and directing him, inter alia, to repatriate the assets of the Cardinal Trust and deposit those assets in the Court registry no later than April 18, 2000 (the “Repatriation Order”).[2] The day before the deadline for repatriation of the trust, Brennan filed a notice of appeal from the Repatriation Order and moved for a stay pending appeal. The District *70 Court denied the stay, but granted an interim stay until April 24, 2000 to allow Brennan to seek relief in this Court. Thereafter, in the course of proceedings before the District Court and this Court, the date for compliance with the Repatriation Order was extended to July 25, 2000, and the date of the hearing on the Contempt Order was adjourned to August 16, 2000. Following oral argument on August 9, 2000, during which counsel for Brennan represented that Brennan was in the process of arranging for repatriation of the Cardinal Trust, we filed an order nostra sponte staying all proceedings then pending before the District Court, including the hearing on the Contempt Order, as well as that portion of the District Court’s April 7, 2000 order requiring repatriation of the trust. See post at 76 n. 6.
II.
On appeal, Brennan challenges the April 7, 2000 Order of the District Court only insofar as it requires him to repatriate the assets of the Cardinal Trust and place those assets in the Court registry. Brennan contends that this aspect of the April 7, 2000 Order, which we refer to as the Repatriation Order, is invalid for any one of several reasons: (1) because it violates 11 U.S.C. § 362(a), the automatic stay provision of the Bankruptcy Code; (2) because it violates principles of res judicata, federal comity, or international comity; and (3) because it was entered ex parte in violation of his right to due process of law. We agree with Brennan’s first argument— that the Repatriation Order violates the automatic stay provision of the Bankruptcy Code — and therefore do not consider his remaining arguments.
Section 362(a) of Title 11 of the United States Code stays the commencement or continuation of virtually all proceedings against a debtor, including enforcement of judgments, that were or could have been commenced before the debtor filed for bankruptcy. To the extent relevant here, § 362(a) provides:
(a) Except as provided in subsection (b) of this section, a petition filed ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debt- or or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....
11 U.S.C. § 362(a). “The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor’s assets before orderly distribution to creditors can be effected.” Penn Terra Ltd. v. Department of Envtl. Resources, 733 F.2d 267, 271 (3d Cir.1984). In addition, the automatic stay provision is intended “to allow the bankruptcy court to centralize all disputes concerning property of the debtor’s estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.” In re United States Lines, Inc., 197 F.3d 631, 640 (2d Cir.1999) (internal quotation marks omitted).
Section 362(b) establishes several exceptions to the automatic stay. One of these exceptions, set forth in subsection (b)(4), is at the heart of the dispute in this case. That provision, as amended in 1998, see Pub.L. No. 105-277, § 603, 112 Stat. 2681, 2681-886 (1998), provides that the filing of a bankruptcy petition
*71 does not operate as a stay ... under paragraph (1), (2), [or] (3) ... of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit’s ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit’s ... police or regulatory power.
11 U.S.C. § 362(b)(4). As we have explained, the purpose of this exception is to prevent a debtor from “frustrating necessary governmental functions by seeking refuge in bankruptcy court.” City of New York v. Exxon Corp., 932 F.2d 1020, 1024 (2d Cir.1991) (internal quotation marks omitted); see also S.Rep. No. 95-989, at 52 (1978), U.S. Code Cong. & Admin. News at 5787, 5838; H.R.Rep. No. 95-595, at 343 (1977), U.S. Code Cong. & Admin. News at 5963, 6299. Thus, “where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.” H.R.Rep. No. 95-595, at 343, U.S. Code Cong. & Admin. News at 6299; accord S.Rep. No. 95-989, at 52, U.S. Code Cong. & Admin. News at 5838.
In the present case, Brennan concedes that the SEC obtained the Repatriation Order in a proceeding to enforce its “police and regulatory power.” Cf. SEC v. Towers Fin. Corp., 205 B.R. 27, 29-31 (S.D.N.Y.1997) (holding that a civil enforcement action by the SEC against the debtor-defendant fit within the “governmental unit” exception of § 362(b)(4)); Bilzerian v. SEC, 146 B.R. 871, 872-73 (M.D.Fla.1992) (same); 3 CollieR on BaNkruptoy § 362.05[5][b][i], at 362-63 (5th ed. 2000) (“The police or regulatory exception has ... been applied to enforcement actions by the Securities and Ex-change Commission, including actions seeking disgorgement of illicit profits.”). Nevertheless, Brennan argues that the “governmental unit” exception of § 362(b)(4) is inapplicable because the Repatriation Order is part of an effort by the SEC to enforce a money judgment— namely, the July 1995 Judgment — and § 362(b)(4), by its terms, limits the exception to “enforcement of a judgment other than a money judgment.” 11 U.S.C. § 362(b)(4) (emphasis added). In other words, Brennan contends that this case fits within an “ ‘exception to the exception,’ [for] actions to enforce money judgments ..., even [those that] otherwise [a]re in furtherance of the State’s police powers.” Penn Terra, 733 F.2d at 272.
Although the question is a close one, we agree with Brennan that the Repatriation Order fits within the exception to the governmental unit exception and that the order therefore violates the automatic stay. It is well established that the governmental unit exception of § 362(b)(4) permits the entry of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit’s police or regulatory power. See, e.g., NLRB v. 15th Ave. Iron Works, Inc., 964 F.2d 1336, 1337 (2d Cir.1992); NLRB v. Continental Hagen Corp., 932 F.2d 828, 832-35 (9th Cir.1991); NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 942-43 (6th Cir.1986); EEOC v. Rath Packing Co., 787 F.2d 318, 326-27 (8th Cir.1986); Penn Terra, 733 F.2d at 275; see also H.R.Rep. No. 95-595, at 343, U.S. Code Cong. & Admin. News at 6299 (“[W]here a governmental unit is ... attempting to fix damages for violation of [laws with police or regulatory purposes], the action or proceeding is not stayed under the automatic stay.” (emphasis added)). However, these and other cases hold that anything beyond the mere entry of a money judgment against a debtor is prohibited by the automatic stay. See, e.g., EEOC v. McLean Trucking Co., 834 F.2d 398, 402 (4th Cir.1987) (holding that the Equal Employment Opportunity Commis *72 sion’s suit was “exempt from the automatic stay until its prayer for monetary relief is reduced to judgment ” (emphasis added)); Edward Cooper Painting, 804 F.2d at 942-43 (“[O]nce proceedings are excepted from the stay by section 362(b)(4), courts have allowed governmental units to fix the amount of penalties, up to and including entry of a money judgment.” (internal quotation marks omitted) (emphasis added)); Rath Packing, 787 F.2d at 326-27; see also 2 Daniel R. Cowans et al., Cowans Bankruptcy Law and Practioe § 11.5, at 517 (1994) (“Steps preparatory to money collection ... have been properly barred as not within the exception.”). As we explained in 15th Ave. Iron Works, “[t]he collection of [a money] judgment after entry ... is not authorized ... and requires a separate application to the bankruptcy court.” 964 F.2d at 1337 (emphasis added).
The Eighth Circuit’s decision in Rath Packing provides a good example of the distinction between mere entry of a money judgment and proceedings beyond such entry. In that case, the Equal Employment Opportunity Commission (the “EEOC”) sued Rath Packing Co., a meat slaughterer and processor, for violations of Title VII. After the EEOC filed suit, but before the District Court had entered any judgment, Rath Packing filed a petition under Chapter 11 of the Bankruptcy Code. Thereafter, the District Court entered judgment against Rath Packing in the Title VII action, ordering the company, inter alia, to pay $1,000,000 in back pay plus post-judgment interest. On appeal, the Eighth Circuit held that the EEOC’s action was not stayed by the automatic stay provision because it was brought pursuant to the EEOC’s “police or regulatory power,” see 787 F.2d at 324-25, and affirmed the District Court’s entry of a money judgment against Rath Packing, see id. at 326. However, the Court of Appeals drew a clear distinction between mere entry of the money judgment and other aspects of the District Court’s ruling:
[T]he district court did not err in entering a money judgment against Rath. The district court, however, went beyond the entry of a money judgment as permitted by [§ 362(b)(4) ] and established a detailed payment plan. The judgment ... not only awarded EEOC the sum of $1,000,000, but required Rath to repay the sum in five equal installments of principal with accrued interest, with the first installment due on February 10, 1985. Failure to meet a required installment results in acceleration of the unpaid balance at the option of EEOC. EEOC was also directed to formulate a plan for disbursement of judgment proceeds and to set up a claims system. This plan went beyond the entry of a money judgment and therefore violated 11 U.S.C. § 362(a).
Id. at 326 (emphasis added). The Eighth Circuit was unmoved by the EEOC’s promise “that during the pendency of the bankruptcy proceedings it will not file an action against Rath for contempt for failure to pay or otherwise attempt to actually obtain execution of the judgment.” Id. According to the Court, “[n]either EEOC’s promise not to collect the judgment nor the possibility that the bankruptcy court will modify the payment plan is sufficient to correct the error.” Id. at 327.
It is not, as the dissent suggests, post at 78, out of mere obeisance to each other’s “side remarks,” that various circuits have insisted that the line between “police or regulatory power” on the one hand, and “enforcement of a ... money judgment” on the other, be drawn at entry of judgment. Rather, courts have drawn the line there because that is the most logical place for it. When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity — it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive. It is this added expense that deters a party from defrauding or polluting — not the *73 identity of the entity which it must eventually pay. Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity — in the public interest, it is burdening certain conduct so as to deter it. However, once liability is fixed and a money judgment has been entered, the government necessarily acts only to vindicate its own interest in collecting its judgment. Except in an indirect and attenuated manner, it is no longer attempting to deter wrongful conduct. It is therefore no longer acting in its “police or regulatory” capacity, and the exception to the exception does not apply.[3]
In the present case, it is plain that the District Court went beyond the mere entry of a money judgment in entering the Repatriation Order since the money judgment obtained by the SEC against Brennan was entered in July 1995. To be sure, the SEC asserts that it is not seeking to collect the July 1995 Judgment, but only to prevent Brennan from concealing or dissipating the assets of the Cardinal Trust. In addition, the SEC acknowledges that it may be entitled to no more than its pro rata share of any assets obtained. However, as the Rath Packing Court held, the “exception to the exception” for enforcement of a money judgment does not depend on a governmental unit’s profession of good faith. See id. Moreover, notwithstanding the SEC’s assertions to the contrary, the record makes clear that the SEC is seeking repatriation of the Cardinal Trust for the purposes of enforcing the July 1995 Judgment — even if it does not claim an exclusive entitlement to the trust assets. Thus, for example, the SEC deposed Brennan pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, a rule which governs discovery “in proceedings on and in aid of’ the “execution” of a judgment. In addition, the SEC originally sought the Repatriation Order as “ancillary” relief with respect to its motion for an order to show cause why Brennan should not be held in contempt of the July 1995 Judgment, and justified its motion on the ground that “Brennan has not complied with the judgment.”[4] In short, the SEC may purport not to claim an entitlement to the full Cardinal Trust, but it is plainly seeking through the Repatriation Order to satisfy at least part of the July 1995 Judgment from the assets of the Cardinal Trust. Accordingly, under the plain terms of § 362(b)(4), the Repatriation Order violates the automatic stay.
We are unpersuaded by the SEC’s arguments against application of the “exception to the exception” for enforcement of money judgments in this case. First, the SEC *74 places heavy reliance on the amendments to the governmental unit exception enacted by Congress in 1998. Prior to those amendments, the governmental unit exception was embodied in two subsections of § 362(b), which provided that the filing of a bankruptcy petition does not operate as a stay:
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power....
11 U.S.C. § 362(b) (1994). The Chemical Weapons Convention Implementation Act of 1998, part of the Omnibus Consolidated Emergency Supplemental Appropriations Act of 1999, amended the exception by, inter alia, combining subsections (b)(4) and (b)(5) into one subsection (b)(4) and expanding the scope of the exception to cover proceedings “to obtain possession of property of the estate ... or to exercise control over property of the estate” otherwise stayed by 11 U.S.C. § 362(a)(3). See Pub.L. No. 105-277, § 603, 112 Stat. 2681, 2681-886 (1998); see also 3 Collier, supra, § 362.05[5], at 362-56 to 57 (discussing the 1998 amendments).[5]
The SEC’s argument that these amendments are material to this case is belied by the fact that Congress maintained the “exception to the exception” for enforcement of money judgments. The SEC would have us interpret the expansion of the governmental unit exception to cover proceedings otherwise stayed by § 362(a)(3) to mean that a governmental unit has “unqualified” authority to seek custody of estate property outside the bankruptcy proceedings. Brief of Appel-lee at 33. However, this proposed “exception to the exception to the exception” would virtually swallow whole the exception to the exception for enforcement of money judgments. Moreover, it would run contrary to the limited legislative history of the 1998 amendments, which provides in relevant part that the amendments “should not be read to expand the exceptions to the automatic stay to cases where governmental units are merely seeking to exercise control of a debtor’s property to satisfy debt.” 143 Cong. Reo. E2305 (1998) (statement of Rep. Conyers, Ranking Member of the Judiciary Committee); see also 143 Cong. Reo. H10951 (1997) (statement of Rep. Gilman on behalf of Rep. Hyde, Chairman of the Judiciary Committee); cf. 3 Collier, supra, § 362.05[5][b], at 362-60 to 61 (“The addition of the introductory references to subsection (a)(3) ... may have affected the operation of the second phrase, derived from former subsection (b)(5). Thus, acts to obtain possession or exercise control over property of [an] estate ... would not be stayed. This expansion of the exception to stay should be read, however, ... so that the expansion covers only the enforcement of nonmoney judgments. This would be consistent with the purpose of the amendment ... and -with the limited legislative history of the amendment.” (emphasis added)); cf. also id. § 362.05[5][b], at 362-57 (“Despite some ambiguities introduced by the [1998 amendments], the scope of the [governmental unit] exception remains largely unchanged.”).
Second, the SEC argues that because it seeks only to bring the Cardinal Trust within the jurisdiction of the Bankruptcy Court and claims an entitlement *75 only to its pro rata share of the trust assets, the Repatriation Order is not inconsistent with Congress’s purpose in enacting the “exception to the exception” for money judgments. That is, the SEC argues that while the purpose of the “exception to the exception” for money judgments is to prevent the Government from gaining “preferential treatment” in bankruptcy proceedings “to the detriment of all other creditors,” S.Rep. No. 95-989, at 52 (1978), U.S. Code Cong. & Admin. News at 5787, 5888; accord H.R.Rep. No. 95-595, at 343 (1978), U.S. Code Cong. & Admin. News at 5963, 6299, its actions in seeking the Repatriation Order are intended to, and will, benefit all other creditors. However, nothing in the legislative history suggests, let alone shows, that the “preferential treatment” rationale was Congress’s sole purpose in enacting the “exception to the exception.” To the contrary, the “exception to the exception” is also designed to reinforce the scheme of priorities set forth in 11 U.S.C. § 507 and to preserve the benefits to a debtor of discharge, see 3 CollieR, supra, § 362.05[5][b], at 362-59, both of which could be undermined by allowing governmental units to initiate proceedings like the present one. Moreover, at bottom, the SEC’s argument that it is not seeking “preferential treatment” depends on its assertion that it is not seeking to collect the July 1995 Judgment. As we stated above, however, the “exception to the exception” for enforcement of a money judgment does not depend on a governmental unit’s profession of good faith.
In the final analysis, the policies behind § 362 as a whole weigh strongly in favor of applying the automatic stay in these circumstances. As noted, the general policy behind the automatic stay is “to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor’s assets before orderly distribution to creditors can be effected.” Penn Terra, 733 F.2d at 271. In addition, the automatic stay provision is intended “to allow the bankruptcy court to centralize all disputes concerning property of the debtor’s estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.” United States Lines, 197 F.3d at 640 (internal quotation marks omitted). Section 362(b)(4) carves out a limited exception to these policies, see, e.g., 124 Cong. Reo. H11,089 (1978) (statement of Rep. Edwards) (noting that § 362(b)(4) “is intended to be given a narrow construction”); accord 143 Cong. Rec. H10951 (1997) (statement of Rep. Gilman on behalf of Rep. Hyde, Chairman of the Judiciary Committee), in order to prevent a debtor from “frustrating necessary governmental functions by seeking refuge in bankruptcy court.” Exxon Corp., 932 F.2d at 1024 (internal quotation marks omitted). Here, however, it is undisputed that the type of relief sought by the SEC is available through the Bankruptcy Court; indeed, the bankruptcy trustee (with the support of the SEC) tried, but failed, to obtain an order from the Bankruptcy Court requiring repatriation of the Cardinal Trust in 1998. Thus, it is hard, if not impossible, to argue that Brennan is “seeking refuge in bankruptcy court.” Id. (internal quotation marks omitted). Under these circumstances, therefore, to allow the SEC to pursue the Repatriation Order in the United States District Court for the Southern District of New York would undermine the policies of the automatic stay provision without furthering the policies behind the governmental unit exception.
III.
In sum, we hold that the Repatriation Order was entered by the District Court in violation of the automatic stay provision of 11 U.S.C. § 362(a). In so holding, we emphasize that nothing prevents the SEC or the bankruptcy trustee (who apparently supports the SEC’s actions in this case) from seeking repatriation of the Cardinal Trust before the United States Bankruptcy Court for the District of New Jersey, where Brennan’s bankruptcy proceedings are pending. Understandably, the SEC *76 and the bankruptcy trustee may have believed that they could obtain a more sympathetic hearing from the District Court, which presided over Brennan’s 1994 fraud trial, than from the Bankruptcy Court, which is charged with responsibility for, inter alia, protecting the interests of all of Brennan’s creditors and which denied an application by the bankruptcy trustee in May 1998 for repatriation of the Cardinal Trust. However, if the bankruptcy trustee and its ally, the SEC, were aggrieved by the Bankruptcy Court’s ruling on the May 1998 application for repatriation, their proper recourse was to appeal that ruling to the United States District Court for the District of New Jersey, not to bring a new motion for the same relief in the United States District Court for the Southern District of New York.
The order of the District Court is vacated.[6]

. An offshore asset protection trust "is a trust which is established under foreign trust laws by a U.S. citizen, typically managed by a foreign trustee, and designed to lawfully remove assets from the settlor's balance sheet without creating any adverse federal tax consequences or requiring the settlor to lose all control over [such] assets. More generally, [an offshore asset protection trust] can be viewed as a trust, the assets of which are, as to a particular beneficiary, immune from the claims of that beneficiary’s creditors.” John K. Eason, Home from the Islands: Domestic Asset Protection Trust Alternatives Impact Traditional Estate And Gift Tax Planning Considerations, 52 Fla. L.Rev. 41, 42 (2000) (footnote and internal quotation marks omitted); see Elena Marty-Nelson, Offshore Asset Protection Trusts: Having Your Cake and Eating It Too, 47 Rutgers L.Rev. 11, 12 (1994) ("Generally, [offshore asset protection trusts] are trusts created under the laws of certain foreign jurisdictions in order to shield the assets transferred to the trust from future creditors.” (footnote omitted)); see also FTC v. Affordable Media, L.L.C., 179 F.3d 1228, 1239-44 (9th Cir.1999) (discussing the common purposes and operations of offshore asset protection trusts).
In addition to the Cardinal Trust, Brennan established two offshore asset protection trusts just before the 1994 trial. The assets of these trusts were apparently frozen by agreement in Brennan's bankruptcy proceedings, and they are not at issue in this appeal.

. The April 7, 2000 Order also (1) requires Brennan to account for all assets in which he has any beneficial interest or over which he exercises control; (2) freezes all of Brennan’s assets that are not part of the bankruptcy estate; (3) requires Brennan to surrender his passport; (4) prohibits Brennan from traveling outside of the United States; and (5) enjoins Brennan “from attacking the jurisdiction of [the District Court] over this case in the bankruptcy court or in any other forum ... other than in a direct appeal as permitted by law.” These aspects of the April 7, 2000 Order are not at issue on this appeal.

. The dissent argues that "enforcement of a ... money judgment" within the meaning of § 362(b)(4) occurs "when the government's action with respect to the judgment would have the effect of benefitting itself at the expense of other creditors." Post at 80. But the exception to the exception cannot be interpreted as being animated solely by a concern with the government benefitting itself at others’ expense. If § 362(b)(4) were so interpreted, the government could collect on its judgments in any court of competent jurisdiction so long as it bound itself ex ante to distribute the proceeds thus collected to other creditors on a pro rata basis- — after all, by committing itself to such a distribution, the government would bind itself to not "benefit[ ] ... at the expense of other[s]." But such an arrangement, which follows from the dissent's approach to § 362, would badly undermine one of the key purposes of that provision — namely, the centralization of adjudication so that "reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.” In re United States Lines, Inc., 197 F.3d at 640. Moreover, such an arrangement would confer on the government a significant "benefit! ]" that other creditors do not and should not have— a right to shop for a forum, a right to chose where it will seek to collect on its judgment. See post at 75.

. Notwithstanding the language in its motion papers, the SEC asserts that its contempt motion is not based on Brennan’s failure to pay the July 1995 Judgment, but rather, on Brennan's concealment of assets. However, the SEC has failed to identify what order— other than the money judgment of July 1995 — Brennan is alleged to have violated so as to give rise to a contempt proceeding.

. Although not relevant here, the 1998 amendments also expanded the exception to include within its scope organizations exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction. See Pub.L. No. 105-277, § 603(2), 112 Stat. at 2681-886. The title of the Act reflects this change.

. As noted, following oral argument in this case we entered an order nostra sponte staying "all proceedings” then pending before the District Court, including the hearing on the Contempt Order, as well as that portion of the District Court’s April 7, 2000 order requiring repatriation of the trust. On September 22, 2000, we entered an order granting a motion to modify that stay. We now lift the modified stay, and leave it to the District Court to determine what effects, if any, this opinion has on the other aspects of the April 7, 2000 order.