## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

## Peter C. LYBRAND, f/k/a Peter C. Tosto, et al., Defendants.

### No. 00 CIV. 1387(SHS).

United States District Court, S.D. New York.

Sept. 11, 2003.

## OPINION AND ORDER

STEIN, District Judge.

After extended proceedings as well as a bench trial on certain damage issues, the sole remaining issue in this litigation is whether to impose civil monetary penalties pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990, 15 U.S.C. § 78u(d), on three individuals who actively participated in a fraudulent scheme to manipulate stock. For the reasons set forth in this Opinion, monetary penalties are being imposed.

The Securities and Exchange Commission ("SEC") brought this action seeking entry of monetary and injunctive relief against the defendants due to their scheme to defraud investors. The complaint alleged that defendant Peter C. Lybrand, aided and abetted by defendants Richard S. Kern, Donald R. Kern and Charles Wilkins, defrauded innocent investors by engaging in matched trades of shares of shell

corporations without adequate public disclosure in order to create the appearance of substantial legitimate trading, which inflated the market price of the shares and ultimately improperly enriched defendants. The corporations that were used to implement the scheme were also named as defendants. In addition, two trusts that the Kerns established to benefit their children received a portion of the illegal proceeds and were named as "relief defendants."

The SEC complaint charged (1) Lybrand with fraudulent and deceitful market manipulation in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), SEC Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (the "Securities Act"); (2) Wilkins and the Kerns with aiding and abetting Lybrand's violations of Section 10(b) and Rule 10b–5 through their participation in matched trades of the shell corporations' shares in the first days of trading; (3) Lybrand, Wilkins and the Kerns with illegally selling restricted securities without filing the registration statements required by Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c); and (4) relief defendants with receiving a portion of the illegal trading proceeds. Prior to the completion of discovery, the SEC sought a preliminary injunction freezing the assets of the Kerns and Wilkins, ordering an accounting from them and the trusts, and prohibiting the alteration or destruction of documents. In an Opinion dated July 6, 2000, this Court determined that the SEC had established that it was likely to succeed at trial in demonstrating that Wilkins and the Kerns had violated securities laws and granted the SEC's motion. *See SEC v. Lybrand,* No. 00 Civ. 1387, 2000 WL 913894 (S.D.N.Y. July 6, 2000). The details of the scheme are set forth in that opinion and in *SEC v. Lybrand,* 200 F.Supp.2d 384, 387–91 (S.D.N.Y.2002), and will not be repeated here.

Lybrand, who was at that time being prosecuted on criminal charges, defaulted in this civil action, as did several of the corporate defendants that were under his control. A final judgment of default was subsequently entered against the defaulting defendants, enjoining them from violating the securities law and directing disgorgement of $3,757,127.66 and prejudgment interest of $722,936.16, and directed Lybrand to pay a civil monetary penalty of $1,000,000 pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act. *See* Final Judgment of Default, dated March 28, 2002. The remaining defendants—Richard Kern, Donald Kern, Charles Wilkins, EFI Corporation, Barclay Bankcard, Inc., Canyon Vista Corp. and Salteaux, Ltd.— then moved for summary judgment in their favor and the SEC moved as well for summary judgment against the relief defendants on the grounds that they had received ill-gotten gains and against the remaining non-defaulting defendants pursuant to Sections 5(a) and (c) of the Securities Act. This Court denied defendants' motion and granted the SEC's motion. *See Lybrand,* 200 F.Supp.2d at 389.

Subsequent to that determination, the Kerns and Wilkins entered into "Consents and Undertakings" in which they agreed, without admitting or denying the SEC's allegations, to be enjoined from violating Section 10(b) and Rule 10b–5 thereafter.

On August 6, 2002, Donald Kern filed for bankruptcy pursuant to Chapter 7 of the U.S. Bankruptcy Code. (Def.Ex. HH).[1]

---

1. References to "Def. Ex. __" or "Pl.Ex. __" are to exhibits introduced into evidence at the October 7, 2002 trial described *infra.*

In connection with a creditor meeting in the bankruptcy proceeding, Donald Kern testified that, as of two years earlier—i.e., approximately July 2000—he did not own any private stocks, nor was he a partner in any partnerships, joint ventures or related businesses. When questioned as to why the July 2000 accounting—which had been sworn to by Richard, not Donald—revealed private stock assets by Donald of $200,000 and joint venture assets of $385,000, Donald testified that although he knew of the July 2000 accounting, he had never seen a physical copy of it until two weeks prior to the creditor meeting in 2002 and that he did not know why his brother had sworn to Donald's ownership of the assets in July 2000. (Pl.Ex. 25 at 12—22).

In separate accountings submitted to the SEC in September 2002, Charles Wilkins confirmed that he had preserved his frozen assets except for $75,000 in "private stock" that had declined in value to $0, (Def.Ex. JJ), and Richard Kern revised the value of his assets from $2,798,000 in July 2000 to $923,500. Richard explained that (1) "[s]tock positions have been reduced or by market and business conditions or expenses" and (2) the "declining market and business conditions" and disclosure of this pending securities case reduced the value of his ventures. (Def.Ex. GG). As trustee for the relief defendant trusts, Richard also attested to the devaluation of the trusts from $995,000 to between $150,000 and $300,000, allegedly due to market losses, "legal and accounting expenses," and "business ventures and expenses, etc." (*Id.*).

On October 11, 2002, a bench trial was held to determine the issues of disgorgement, prejudgment interest and civil penalties. During that trial, the parties stipulated to judgment against the remaining defendants for disgorgement in the amount of $5,972,525 and prejudgment interest in the amount of $1,792,648, calculated by agreement at the rate employed by the Internal Revenue Service for tax underpayments, *see* 26 U.S.C. § 6621(a)(2). All defendants except the relief defendants also stipulated to the issuance of injunctions against future violations of Section 5 of the Securities Act.

## I. Discussion

As a result of those agreements, the sole remaining issue for this Court to determine is whether to impose civil monetary penalties pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990, 15 U.S.C. § 78u(d) (the "Remedies Act"). District courts have discretion in determining the appropriate amount of any penalty. *See SEC v. Kane*, 97 Civ. 2931, 2003 WL 1741293, *2 (S.D.N.Y. April 1, 2003); *SEC v. Robinson*, 00 Civ. 7452, 2002 WL 1552049, *10 (S.D.N.Y. July 16, 2002); 15 U.S.C. § 77t(d)(2) ("The amount of the penalty shall be determined by the court in light of the facts and circumstances."). A monetary penalty is designed to serve as a deterrent against securities law violations. *See SEC v. Palmisano*, 135 F.3d 860, 866 (2d. Cir.1998); *SEC v. Tanner*, 02 Civ. 306, 2003 WL 21523978, *2 (S.D.N.Y. July 3, 2003); *SEC v. Moran*, 944 F.Supp. 286, 296 (S.D.N.Y.1996). As set forth in H.R. Report No. 616—the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act,

> [T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations other than insider trading .... Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud. A violator who avoids detection is able to keep the

profits resulting from illicit activities. Currently, even a violator who is caught is required merely to give back his gains with interest, leaving him no worse off financially than if he had not violated the law. The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator.

*Kane*, 2003 WL 1741293 at *3–*4 (citing *SEC v. Coates*, 137 F.Supp.2d 413, 428–29 (S.D.N.Y.2001)) (quoting H.R.Rep. No. 101–616 (1990)); *SEC v. Bocchino*, 98 Civ. 7525, 2002 WL 31528472, *4 (S.D.N.Y. Nov.8, 2002).

The Remedies Act categorizes penalties into three tiers of increasing severity. Each tier provides for the penalty to be as described below or "the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 77t(d). Tier I penalties shall not exceed $5,000 per natural person. *Id.* Tier II penalties are available if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and shall not exceed $50,000 per natural person. *Id.* Tier III penalties are available if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and the violation "resulted in substantial losses or created a significant risk of substantial losses to other persons," and shall not exceed $100,000 per natural person. *Id.*

■ General factors that courts look to in imposing those penalties include (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition. *See Robinson*, 2002 WL 1552049 at *10; *SEC v. McCaskey*, 98 Civ. 6153, 2002 WL 850001, *14 (S.D.N.Y. March 26, 2002); *Coates*, 137 F.Supp.2d at 428–29; *SEC v. Todt*, 98 Civ. 3980, 2000 WL 223836, *13 (S.D.N.Y. Feb. 25, 2000). *See also Kane*, 2003 WL 1731293 at *4; *SEC v. Inorganic Recycling Corp.*, 99 Civ. 10159, 2002 WL 1968341, *5 (S.D.N.Y. Aug. 23, 2002). Courts may also look to evidence of defendants' financial deception, including any evidence of defendants violating asset freeze orders. *McCaskey*, 2002 WL 850001 at *15 (defendant's history of hiding assets from creditors, including sheltering assets during bankruptcy proceedings, supported imposition of Tier III penalty).

■ Donald and Richard Kern and Charles Wilkins contend that no monetary penalty should be imposed on them because they did not intentionally or willfully violate Section 5 of the Securities Act. Specifically, they contend that they believed that their method of establishing corporations was legally permissible and that they sought advice of counsel as to whether the shares of the established corporations could be publicly traded. *See* Def. Statement of Elements of Each Defense, dated September 27, 2002 at 3. These individuals also contend that a "reputable broker"—who knew how the stocks had been issued and sold—assisted them in listing the corporations on the OTC Bulletin Board. *Id.* at 3–4. Additionally, they contend that they lacked sophistication and business expertise to know that

the securities had to be registered with the SEC. *Id.* at 4.

After reviewing all of the evidence submitted at the trial, this Court finds that Tier III monetary penalties are warranted. Despite protestations of the brothers Kern and Charles Wilkins that they did not knowingly or willfully violate any securities laws, their actions in fact easily satisfy the statutory requirements for the imposition of Tier III penalties—their actions involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and these violations resulted in substantial losses to others. *See* 15 U.S.C. § 77t(d). As this Court set forth in its May 10, 2002 Opinion, defendants

> "created or controlled each of the shell corporations, secured their listings on the OTC bulletin board and sold their shares into the public market without filing a registration statement. They acquired the shares from the original shareholders pursuant to their agreements with Lybrand and sold them on the bulletin board in a series of matched trades that artificially inflated the price of the stock. Neither the original shareholders nor the investors who purchased the shares on the bulletin board had access to information regarding defendants' agreements with Lybrand and their effect on the share price of the securities. Defendants reaped profits of millions of dollars from their public sales. It is precisely this type of conduct that the registration requirement aims to prevent."

*Lybrand,* 200 F.Supp.2d at 398.

These egregious actions were fraudulent and involved deceit and market manipulation that resulted in millions of dollars in losses to unwitting investors, and could not have occurred but for defendants' active involvement and knowledge. Far from being an isolated event, the actions of these men involved a multitude of improper securities transactions that occurred over several months—they violated the securities laws repeatedly and with regularity.

Wilkins and the Kerns attempt to minimize their responsibility by claiming that they did not know they were violating securities laws. However, this claim is merely a "post hoc argument[ ] . . . seeking to justify an impermissible transaction." *Id.* at 397. Instead of taking responsibility for their actions, they blame others, including Lybrand, their lawyer and their stock broker, while downplaying their own involvement. This lack of accountability is an additional factor warranting a civil penalty. *See Robinson,* 2002 WL 1552049 at *10 (the failure of a defendant to "own up to his wrongdoing in the face of overwhelming evidence lends further support to the penalty"); *Coates,* 137 F.Supp.2d at 430; *Moran,* 944 F.Supp. at 296. Their alleged lack of knowledge of the securities laws is belied by their repeated engagement in the business of creating and selling publicly traded shell corporations since the mid–1990s. *See Lybrand,* 200 F.Supp.2d at 387. Additionally, the actions at issue here are not their "first brush" with law enforcement— in 1994, Richard Kern consented to a lifetime injunction in a civil action for franchising fraud, and in the 1970s, Wilkins pled guilty to mail fraud in connection with mortgage banking activities. Accordingly, their contentions are without merit.

This Court also has substantial concerns over the individuals' lack of cooperation with the SEC with respect to the diminution of assets—the proceeds of illegal activities—that were frozen pursuant to an Order of this Court on July 6, 2000. Specifically, the inconsistency of Donald Kern's 2002 bankruptcy testimony with his July 2000 accounting as well as the vague and undocumented reasons why the hold-

ings of Richard and the trusts declined substantially from 2000 to 2002 are disquieting. Wilkins' sworn accountings revealed substantially less diminution in value. None of the defendants has cogently or adequately explained these losses to the SEC or to the Court. The Kerns' and Wilkins' financial deception factors in favor of imposing a Tier III penalty. *See McCaskey*, 2002 WL 850001 at *15.

Given the seriousness of the fraud, the essential and active roles the individuals played in perpetrating the fraud, the substantial losses caused by the fraud, their failure to accept responsibility for their actions, and the unaccounted for diminution of assets that were frozen by Court Order, this Court imposes a civil monetary penalty of $400,000 against Richard Kern, $400,000 against Donald Kern, and $300,000 against Charles Wilkins (for a total penalty of $1.1 million).

## II. Effect of Donald Kern's Pending Bankruptcy

█ In August of 2002, Donald Kern filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 362(a) "stays the commencement or continuation of virtually all proceedings against a debtor, including enforcement of judgments, that were or could have been commenced before a debtor filed for bankruptcy." *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir.2000). However, the Bankruptcy Code provides exceptions to the stay for

"the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's or organizations' police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to en-

force such governmental unit's or organizations' police or regulatory power."
11 U.S.C. § 364(b)(4).

The U.S. Court of Appeals for the Second Circuit has interpreted the Bankruptcy Code to allow the "SEC to prosecute an action through and including the entry of judgment on the merits," including the entry of a money judgment against a debtor. *SEC v. Thrasher*, 92 Civ. 6987, 2002 WL 523279, *1 (S.D.N.Y. April 8, 2002) (citing *Brennan*, 230 F.3d at 71); *SEC v. Friedlander*, 01 Civ. 4658, 2002 WL 1628832, *1 (S.D.N.Y. July 23, 2002).

Although that court has not specifically addressed whether injunctions are exemptions to bankruptcy stays, other courts have indicated that injunctions in SEC actions are also exempt. *See Friedlander*, 2002 WL 1628832 at *1; *SEC v. Towers Financial Corp.*, 205 B.R. 27, 29–30 (S.D.N.Y.1997); *Bilzerian v. SEC*, 146 B.R. 871, 873 (Bankr.M.D.Fla.1992). Thus, this action by the SEC is one to enforce the SEC's "police and regulatory power" and full relief can be entered against Donald Kern, notwithstanding his bankruptcy status.

## III. Conclusion

This Court finds, based on the totality of evidence, that the defendants are liable for money judgments and injunctions. Accordingly, the Clerk of Court is directed to enter judgment against Richard S. Kern, Donald R. Kern, Charles Wilkins, EFI Corporation, Barclay Bankcard, Inc., and Canyon Vista Corporation, jointly and severally, for disgorgement in the amount of $5,972,525 and prejudgment interest in the amount of $1,792,648, and against relief defendants Hannah G Irrevocable Trust and Hannah R Trust, jointly and severally, for disgorgement in the amount of $995,000 and prejudgment interest in the amount of $279,512, with any payment of

disgorgement or prejudgment interest amounts by relief defendants set against the other defendants' disgorgement and prejudgment interest judgments. In addition, the Court imposes civil penalties in the amount of $400,000 against Richard Kern, $400,000 against Donald Kern, and $300,000 against Charles Wilkins. Richard S. Kern, Donald R. Kern, Charles Wilkins, EFI Corporation, Barclay Bankcard, Inc., and Canyon Vista Corporation are also permanently enjoined from violating Section 5 of the Securities Act and, pursuant to Section 308 of the Sarbanes–Oxley Act of 2002, 15 U.S.C. § 7246(a), their monetary penalties shall be added to the disgorgement amount.

SO ORDERED.