John E. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

Nos. 73 Civ. 3058 (WCC),
73 Civ. 4278 (WCC).

United States District Court,
S.D. New York.

March 18, 1992.

See also 777 F.Supp. 1190.

The NAACP Legal Defense and Educational Fund, Inc., New York City, for private plaintiffs; Marina C. Hsieh, of counsel.

E.E.O.C., New York City, for E.E.O.C.; Michael J. O'Brien, Trial Atty., of counsel.

Proskauer Rose Goetz & Mendelsohn, New York City, for Maxwell Newspapers, Inc.; Kathleen M. McKenna, of counsel.

Marks & Murase, New York City, for Tribune New York Holdings, Inc.; Gerald T. Hathaway, of counsel.

William S. Ellis, Interim Adm'r, Forsythe, Holbrook, Patton, Bovone, Seward & Ellis, New York City.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

A class of private plaintiffs and the Equal Employment Opportunity Commission ("EEOC") brought two civil rights actions in 1973 against the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or "Union") and more than fifty news publishers and distributors within the Union's jurisdiction. Both suits charged that the Union, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an affirmative action program designed to achieve for minorities the status they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an Opinion and Order approving a settlement between the parties and incorporating the Settlement Agreement in a Consent Decree, familiarity with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y. 1974) *aff'd*, 514 F.2d 767 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Settlement Agreement implements an affirmative action program which modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. Under the Consent Decree, each employer maintains a work force of regular situation holders for its minimum delivery needs. To accommodate fluctuations in circulation, the publishers are permitted to supplement their work force with daily shapers.

The Settlement Agreement also established an Administrator, appointed by the Court, to monitor compliance with the affirmative action program and hear and decide allegations of race discrimination in the industry. The fees and expenses of the

Administrator are financed by the NMDU–Employers' Administration Fund (the "Administrator's Fund"), for which the various companies and the Union are assessed pursuant to an Order signed by Judge Pierce on June 11, 1975, and allocated as follows:

| | | |
|---|---|---|
| 1. | NMDU | 19.3% |
| 2. | New York News | 19.3% |
| 3. | New York Times | 19.3% |
| 4. | New York Post | 9.1% |
| 5. | Others | 33.0% |

Paragraph 7 of Judge Pierce's Order also provides:

> Except as provided below, the Administrator's compensation and expenses shall be paid from the Fund without separate allocation to any particular person. The Administrator may allocate expenses for a particular hearing or claim if the parties attending said hearing or named in said claim so agree. Any claim that appears to the Administrator to be frivolous shall be charged against the appropriate person taking into consideration the nature of the claim and other relevant circumstances. In such circumstances, the Administrator shall submit a separate statement to the Adjustment Board covering such specially allocated charges and shall be paid such charges from the Fund. The Fund shall thereupon be reimbursed for such special charges by the person involved.

Maxwell Newspapers, Inc. ("Maxwell")[1] has paid no money into the Administrator's Fund since November, 1991. As a result, the Fund reduced the January monthly bill of the Administrator, which was $12,810.89, by Maxwell's pro rata share of 19.3% in the amount of $2,472.00.

This matter is presently before the Court on the application of Maxwell, the Debtor-in-Possession in bankruptcy proceedings Case No. 91B–11531, to be relieved during the term of Maxwell's bankruptcy proceedings from continued support of the Interim Administrator. Maxwell argues that 11 U.S.C. § 362 operates to stay any claims against it for continued financial support of the Administrator. Moreover, Maxwell submits that the filing of its petition in bankruptcy stays continued enforcement of the Consent Decree where that enforcement requires the processing of pending or new claims against the Debtor since such claims are not an exercise of the police or regulatory power of the government, within the meaning of § 362(b)(4).

## DISCUSSION

### A. Jurisdiction to Determine the Applicability of the Automatic Stay

■ As an initial matter, Maxwell argues that the issue of whether the automatic stay operates to relieve it from continued support of the Interim Administrator, appointed to oversee and implement the provisions of the *Patterson* Consent Decree, is an issue best addressed by the bankruptcy court. Maxwell concedes that whether the stay applies is an issue of law within the competence of both the court before which the litigation is pending and the bankruptcy court supervising the reorganization. *See In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 348 (2d Cir.1985). However, it submits that, in light of the facts of this case, this Court should not exercise its authority to make such a determination. The Court cannot agree.

In *Baldwin,* the Court of Appeals for the Second Circuit vacated an injunction issued by the district court enjoining the debtor from seeking any relief in any court against any defendant in a large group of securities fraud actions consolidated for pretrial proceedings in multi-district litigation in the Southern District of New York. While recognizing that the court in which the litigation claimed to be stayed is pending has jurisdiction to determine the applicability of the automatic stay to that proceeding, the Second Circuit ruled that, under the circumstances of the case before it, the bankruptcy court should be afforded the opportunity to determine the applicability of the automatic stay.

---

**1.** Maxwell purchased the *New York Daily News* from Tribune New York Holdings, Inc. on March 5, 1990.

In concluding that the district court had abused its discretion in issuing the injunction prohibiting the debtor from applying to the bankruptcy court for any relief against any defendant, the *Baldwin* Court emphasized that "centralizing construction of the automatic stay in the Bankruptcy Court" would result in "uniformity on issues of law," and would assist that court's effort to "assure equality of treatment among creditors." 765 F.2d at 349. Such concerns are not equally implicated in the instant case where this Court is asked merely to determine whether the automatic stay operates to relieve Maxwell from continued support of the Administrator appointed to implement the provisions of the *Patterson* Consent Decree. As noted by the Court in *Baldwin*, the "possibility of conflicting decisions is far more serious in this complex Chapter 11 proceeding with its numerous indemnity claimants than would be the case when a District Court determines that a particular governmental enforcement action is within one of the exceptions to the automatic stay." 765 F.2d at 349 (citing *SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir.1981) (approving district court's determination that pending litigation was exempted from the automatic stay by exception for actions by governmental unit to enforce police or regulatory power)).

The Court thus concludes that the issue of whether the automatic stay applies to the provisions of the *Patterson* Consent Decree requiring contribution to the Administrator's Fund is best decided by this Court, which has substantial experience and familiarity with the *Patterson* matter.

## B. Application of the Automatic Stay

Section 362(a) of the Bankruptcy Code automatically operates to stay "the commencement or continuation ... of a judicial ... proceeding against the debtor" upon the filing of a petition for reorganization under Chapter 11. The purpose of the stay is to give the debtor an opportunity to formulate plans for repayment and reorganization with protection from a " 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated pro-

ceedings in different courts.' " *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540, *reh'g denied*, 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977)). The broad sweep of that section is tempered by the provisions of § 362(b). Section 362(b)(4) provides that the automatic stay does not affect "an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power...." In addition, Section 362(b)(5) allows governmental units to enforce any judgment obtained in the exercise of their police or regulatory power, with the exception of a money judgment.

It is not disputed that the EEOC is a governmental unit charged with, *inter alia*, enforcing Title VII of the Civil Rights Act of 1964. *See* 11 U.S.C. § 101(21) (defining "governmental unit" to include any "department, agency, or instrumentality of the United States"). Moreover, it is clear that the *Patterson* Consent Decree was obtained by the EEOC in an action or proceeding to enforce its police or regulatory powers, in that the Consent Decree was entered into with the express purpose of remedying and prospectively preventing race discrimination in the industry. *See Patterson v. Newspaper and Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y. 1974), *aff'd*, 514 F.2d 767 (2d Cir.1975). The *Patterson* Consent Decree does not protect merely private rights of individuals subjected to race discrimination; rather, it provides injunctive relief which furthers the public policy interests expressed by Congress in enacting Title VII, and enforced through the EEOC's police and regulatory power. *Cf. EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir.), *cert. denied*, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986) ("When EEOC sues to enforce Title VII it seeks to stop a harm to the public—invidious employment discrimination which is as detrimental to the welfare of the country as violations of environmental protection and consumer safety laws, which are expressly exempt from the

automatic stay."). As such, the Court concludes that continued enforcement of the *Patterson* Consent Decree, where such enforcement involves the processing by the Administrator of pending or new claims against Maxwell, is exempt from the operation of the automatic stay.

██ Having found that the EEOC's actions in obtaining the *Patterson* Consent Decree constitute an exercise of the federal government's police or regulatory power, the Court must now decide whether the provisions of the Consent Decree directing the party-defendants to contribute to the support of the Administrator's Fund are in the nature of an attempt to enforce a money judgment, and thus automatically stayed pursuant to Section 362(a) of the Bankruptcy Code. In a case involving the application of Sections 362(b)(4) and (5) to an ongoing attempt by the state of Pennsylvania to enforce its environmental laws, the Third Circuit defined a money judgment as:

> an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist only of two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant.

*Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 275 (3d Cir. 1984). However, the Court recognized that some actions by a governmental unit, while they may not facially appear to be for the enforcement of a money judgment, are in substance just that. In those situations, the Third Circuit concluded that it is necessary to look beyond the form of the action to determine whether the governmental unit is attempting to achieve in actuality what a money judgment was intended to accomplish.

The *Penn Terra* Court suggested that the proper inquiry in determining whether an injunction is an equitable remedy or, in substance, an action to obtain and enforce a money judgment "is whether the remedy would compensate for *past* wrongful acts resulting in injuries already suffered, or protect against potential *future* harm." 733 F.2d at 277. The Court concluded that it is unlikely that any action which seeks to prevent culpable conduct *in futuro* will, in normal course, manifest itself as an action for a money judgment, or one to enforce a money judgment. *Id.* Applying this analysis to the facts of the case before it, the Court of Appeals held that the action brought by the state environmental agency to compel Penn Terra to remedy environmental hazards was properly brought as an equitable action to prevent future harm, and did not constitute an action to enforce a money judgment, notwithstanding the fact that compliance with the environmental laws would require the expenditure of the Chapter 7 debtor's funds. 733 F.2d at 278.

This Court agrees with the approach taken by the Third Circuit in determining whether a given action is in substance one to enforce a money judgment and thus stayed pursuant to Section 362. In the instant case, as in *Penn Terra*, the performance required of the debtor—contribution towards the support of the Administrator's Fund—is injunctive in nature. The Fund is intended to aid the process of remedying and prospectively preventing race discrimination in the newspaper delivery industry. Contributions are required to be made by all defendants whether or not a particular defendant has been charged with specific acts of discriminatory behavior during the period in which the assessments are made. Contributions to the Fund are not designed to redress a given individual for harm suffered—the Fund merely reimburses the costs of monitoring compliance with the Consent Decree and adjudicating charges of discrimination in the industry in violation thereof.

The mere fact that this provision of the Consent Decree requires the debtor to spend money does not render any action to collect that contribution one to "enforce a money judgment." Such a construction of the term "enforcement of a money judg-

ment" would narrow into virtual nonexistence Section 362(b)(5), which permits the enforcement of an injunction entered in furtherance of the governmental unit's police or regulatory powers. As noted by the Third Circuit in *Penn Terra,* compliance with most injunctions requires the expenditure or loss of monies. 733 F.2d at 277–78. *See also United States v. Price,* 688 F.2d 204, 213 (3d Cir.1982) ("It is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by an injunction. Injunctions, which by their terms compel expenditures of money, may similarly be permissible forms of equitable relief.").

The Supreme Court's decision in *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), does not mandate a different result. In *Kovacs,* the state sought a monetary payment from Kovacs to defray environmental cleanup costs. The cleanup order had been reduced to a monetary obligation, and the state conceded that after a receiver was appointed by the state court, the only performance sought from Kovacs was the payment of money. 469 U.S. at 283, 105 S.Ct. at 710.

The Supreme Court held that a state court injunction requiring the payment of money damages to clean up a hazardous disposal site, was a "debt" or "liability on a claim" under Sections 101(4)(B) and 101(11) of the Code. These expenses were held to be claims dischargeable under 11 U.S.C. § 727(b). In a footnote, the Supreme Court distinguished *Penn Terra,* noting that in that case there was neither the appointment of a receiver, nor was the state seeking money from the debtor. In dictum, the *Kovacs* Court further commented: "The automatic stay provision does not apply to suits to enforce the regulatory statutes of the State, but the enforcement of a such judgment by seeking money from the bankrupt—what the Court of Appeals for the Sixth Circuit concluded was involved in this case—is another matter." 469 U.S. at 283 n. 11, 105 S.Ct. at 710 n. 11.

The Supreme Court's implied approval of *Penn Terra* suggests that the Court is not concerned that the debtor may be required to expend money in order to comply with state or federal laws. Instead, it appears that the Court is concerned only with the dispossession of the estate's property by the governmental unit in an attempt to carry out an injunction. The instant case is more factually similar to *Penn Terra* than to *Kovacs.* The EEOC does not seek to bring Maxwell into compliance with the affirmative action provisions of the Consent Decree or the anti-discrimination provisions of Title VII by dispossessing Maxwell of its assets or by seeking compliance via a money judgment. Unlike the State of Ohio in *Kovacs,* the EEOC does not seek to be reimbursed for a definite and certain monetary expense.

Thus, this Court concludes that the provisions of the *Patterson* Consent Decree requiring the *Daily News* to contribute to the continued support of the Administrator are in the nature of injunctive relief to enforce the police power of the federal government, and hence, not subject to the automatic stay provisions of Section 362 of the Bankruptcy Code.[2]

## CONCLUSION

For the foregoing reasons, Maxwell's application to be relieved from continued support of the Administrator during the pendency of its bankruptcy proceedings is denied.

SO ORDERED.

---

**2.** The Court expresses no opinion as to whether the bankruptcy court has power under 11 U.S.C. § 105(a) to issue a discretionary stay notwithstanding the inapplicability of the automatic stay to the Consent Decree's requirement that Maxwell contribute to the continued support of the Administrator.